Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 14, 2003        Decided May 2, 2003

No. 01-3134

UNITED STATES OF AMERICA,
APPELLEE

v.

WILLIAM JOAQUIN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 01cr00216–01)

*Lisa B. Wright*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Chrisellen R. Kolb*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Roscoe C.*

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Howard, Jr.*, U.S. Attorney, *John R. Fisher* and *Roy W. McLeese III*, Assistant U.S. Attorneys.

Before: Sentelle, Henderson and Tatel, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* Tatel.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* Henderson.

Tatel, *Circuit Judge*: Challenging his sentence for distributing crack cocaine, appellant argues, among other things, that the district court misconstrued the scope of its authority in denying his motion for a downward departure under U.S. Sentencing Guidelines section 4A1.3. Although we disagree, we vacate the sentence and remand because, contrary to section 4A1.3's plain language, the district court based its decision in part on appellant's "prior arrest record itself."

## I.

Appellant William Joaquin pleaded guilty to distributing approximately 250 grams of cocaine base to an undercover District of Columbia police officer. In return, the government promised not to file an information under 21 U.S.C. § 841(b)(1) that would have triggered a twenty-year mandatory minimum sentence because Joaquin had previously been convicted of a felony drug offense. 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii). Based on an offense level of 31 and a criminal history category of IV, the presentence report calculated Joaquin's sentencing range as 151 to 188 months. The report assigned two criminal history points for a February 1991 sentence for attempted drug possession; two points for a 1993 sentence for possession of cocaine; three points for a 1993 felony sentence for distributing cocaine; and two points because Joaquin engaged in the 2001 sales while still on parole for the earlier felony. *U.S. Sentencing Guidelines Manual* § 4A1.1(a), (b), (d). Three marijuana and PCP distribution offenses committed while Joaquin was a juvenile were not counted.

Joaquin did not challenge the presentence report's calculation, but asked the district court to depart downward under U.S. Sentencing Guidelines section 4A1.3 because his prior crimes (1) involved drug offenses to support a cocaine addiction for which he never received treatment and (2) were committed without weapons or violence while under the age of twenty-one. Under section 4A1.3, district judges have discretion to depart from otherwise applicable sentencing ranges "[i]f reliable information indicates that the criminal history category [as calculated under other provisions of the Guidelines] does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." *Id.* § 4A1.3. Insisting that his criminal history was significantly less serious than those of most defendants in Category IV, Joaquin argued that he should be treated as falling in Category III with a sentencing range of 135 to 168 months. Opposing the motion, the government argued that Joaquin's seven convictions and eighteen arrests in fourteen years demonstrated a significant risk of recidivism.

The district court began its discussion by stating, "I think this is a close case, everybody. [Defense counsel] Grimm, I hope you take an appeal so we can get some law, but I will have to say that I honestly don't think that this case falls within the case law interpretation of the Guidelines and what would constitute a real over-representation of one's criminal history." Sentencing Tr. at 25. The court added, "I would be delighted to get reversed[,] . . . . [b]ut I honestly don't think that this is an over-representation of his criminal history." *Id.* at 26. Responding to defense counsel's argument that the court should disregard the eleven arrests that had not led to convictions because they were "no papered" and therefore might have involved situations in which the government arrested the wrong person or had too little information to bring a case, the court stated, "those arrests can mean many different things[,] . . . . [but] [t]his number of arrests . . . for a young man of 29, is still an extraordinary number of arrests. When I look at what you have posed as the key issue, whether there is a chance of recidivism, I . . . think this

record shows . . . that there is a great chance of recidivism." *Id.* at 27. The court concluded: "I feel compelled to deny the motion. Not because I don't have any legal authority to grant it, but because I just conclude that this is not a case that falls within the departure downward case law on this issue." *Id.* at 28.

Joaquin appeals, arguing that the district court mistakenly believed that it lacked authority to depart based on the facts of the case and that it violated a provision in section 4A1.3 stating that "a prior arrest record itself shall not be considered under section 4A1.3." *U.S. Sentencing Guidelines Manual* § 4A1.3. Joaquin also argues that the district court did not realize that one of the convictions used to calculate his criminal history category should have been disregarded under section 4A1.1 because it was imposed more than ten years prior to the instant offense. *Id.* § 4A1.1, cmt. n.2.

## II.

We will review a district court's refusal to depart from the applicable Guideline range where the sentence is "imposed in violation of law" or "a result of an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(a)(1), (2); *United States v. Brooke*, 308 F.3d 17, 19 (D.C. Cir. 2002). A refusal to depart based on the district court's mistaken belief that it lacked authority to do so is reviewable as an incorrect application of the Guidelines, but a determination that the particular circumstances of a case do not warrant an exercise of the court's departure authority is a matter of discretion that we cannot overturn. *United States v. Pinnick*, 47 F.3d 434, 439 (D.C. Cir. 1995).

In support of his primary contention—that the district court mistakenly thought that it lacked authority to depart— Joaquin argues that if the court had merely decided that the facts did not warrant a sentence reduction, it never would have urged defense counsel to appeal, for it would have known that *Pinnick* and other D.C. Circuit case law preclude review of exercises of departure discretion. Read in isolation, the district court's reference to an appeal is certainly ambigu-

ous. But read on. "I feel compelled to deny the motion. *Not because I don't have any legal authority to grant it*, but because I just conclude that this is not a case that falls within the departure downward case law on this issue." Sentencing Tr. at 28 (emphasis added). Given that the district court made this statement just before pronouncing Joaquin's actual sentence, we cannot conclude that the court believed that a departure lay outside the scope of its discretion.

Contrary to the government's argument, however, concluding that the district court understood the scope of its authority does not deprive us of jurisdiction because Joaquin argues that the court, in the course of determining that a departure was unwarranted, misapplied the Guidelines in other ways. *See, e.g., United States v. Sammoury*, 74 F.3d 1341, 1345 (D.C. Cir. 1996) (misapplication of the Guidelines may occur as the result of either legal or factual errors). Although Joaquin concedes that he failed to raise in the district court his arguments concerning the arrest records and the stale conviction, criminal defendants may prevail on unpreserved issues if they can demonstrate that an error is "plain or obvious under current law, affects substantial rights, and seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Smith*, 267 F.3d 1154, 1160 (D.C. Cir. 2001) (internal quotation marks and citation omitted); *see also* Fed. R. Crim. P. 52(b). An error affects substantial rights if it is prejudicial. *United States v. Venable*, 269 F.3d 1086, 1089 (D.C. Cir. 2001). Under plain error review, defendants bear the burden of persuasion as to prejudice, but that burden is "slightly less exacting" with regard to sentencing proceedings as compared to trial errors, since a defendant need show only a "reasonable likelihood" that the error affected the court's sentence. *United States v. Saro*, 24 F.3d 283, 286–88 (D.C. Cir. 1994).

We begin with Joaquin's argument that, in declining to depart downward, the district court erred by relying on his prior arrests. Although section 4A1.3 authorizes courts to consider whether a defendant has engaged in "prior similar adult criminal conduct not resulting in a criminal conviction," Joaquin relies on the provision's statement that "[h]owever, a

prior arrest record itself shall not be considered under § 4A1.3." *U.S. Sentencing Guidelines Manual* § 4A1.3. Claiming that the presentence report provides no description of the underlying events, that the record contains no evidence concerning the arrests, and that he never conceded their validity, Joaquin argues that the district court relied on his "prior arrest record itself." *Cf. United States v. Ramirez*, 11 F.3d 10, 14 (1st Cir. 1993) (per curiam) (sentencing court did not commit plain error in relying on a presentence report containing detailed descriptions of defendant's conduct leading to his arrest); *United States v. Terry*, 930 F.2d 542, 545–46 (7th Cir. 1991) (same).

The government responds first by asserting that Joaquin is not entitled even to plain error review because he actively waived the issue when his defense counsel, before arguing that "no papered" arrests in the District of Columbia system were too unreliable to consider in assessing Joaquin's risk of recidivism, stated, "[t]he court can obviously consider anything it wants at sentencing." Sentencing Tr. at 18. At oral argument, however, government counsel candidly conceded that "you could look at it either way." Indeed, at most Joaquin "may have acquiesced in what he now claims is error, but he did not invite it." *In re Sealed Case*, 108 F.3d 372, 374 (D.C. Cir. 1997). Nothing in defense counsel's passing comment suggests that he made a conscious, strategic decision to "intentional[ly] relinquish[ ] or abandon[ ] . . . a known right," *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks and citation omitted), and his argument that the arrests were unreliable as a matter of fact in no way conflicts with Joaquin's argument here that they are also unreliable as a matter of law. *Cf. United States v. Warren*, 42 F.3d 647, 658 (D.C. Cir. 1994) (defendant may not raise argument on appeal that is directly contradictory to his affirmative argument to the sentencing judge).

On the merits, the government does not challenge Joaquin's assertion that the record contains no information about the events underlying his arrests. Instead, it argues that because the prohibition against considering arrest records appears in a paragraph discussing upward departures, it (1)

applies to upward departures only, and (2) even if it also applies to downward departures, it is not so clear as to amount to plain error. We disagree on both counts.

Section 4A1.3 starts with an umbrella paragraph stating that courts may "consider . . . departing from the otherwise applicable guideline range" only where "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." *U.S. Sentencing Guidelines Manual* § 4A1.3, ¶ 1. The two subsequent paragraphs then discuss upward and downward departures, respectively. To be sure, the prohibition that Joaquin relies on appears at the end of the upward departure paragraph. But if, as the government and dissent argue, the Sentencing Commission had intended to bar consideration of arrest records in upward departures only, it would have stated that prior arrest records shall not be considered "in making upward departure decisions," rather than that they shall not be considered "*under § 4A1.3*." *Id.*, ¶ 2 (emphasis added). After all, the Commission knows exactly how to focus on upward departures when it wants to, as it did in the provision's immediately preceding sentence. Reading the two sentences together makes the point crystal clear:

> The court may, after a review of all the relevant information, conclude that the defendant's criminal history was significantly more serious than that of most defendants in the same criminal history category, and therefore consider *an upward departure* from the guidelines. However, a prior arrest record itself shall not be considered *under § 4A1.3.*

*Id.* (emphasis added). Focusing on the word "[h]owever," the dissent argues that the arrest record prohibition modifies only the preceding sentence. But this ignores the fact that the prohibition expressly applies "under § 4A1.3" and that section 4A1.3 applies to both upward *and* downward departures. Moreover, we can see no reason—nor does the government offer one—for considering prior arrest records any

more "reliable" for downward departures than they are for upward departures. Given the Commission's insistence that district courts act only on reliable information and the applicability of the arrest record prohibition "under § 4A1.3," the Guidelines authors had no reason to repeat the prohibition at the end of section 4A1.3's third paragraph discussing downward departures, as the government would apparently require. The prohibition thus applies to both types of departures.

This leaves the question whether section 4A1.3 is so clear that the district court's reliance on Joaquin's arrest records amounted to plain error. The government argues that the prohibition is ambiguous because, again, it appears in the paragraph on upward departures. This argument might have some merit if the prohibition had stated merely "a prior arrest record itself shall not be considered," since readers might then wonder whether it applied only to the upward departure paragraph. But the sentence is not at all ambiguous, for it states expressly that prior arrest records shall not be considered "*under § 4A1.3.*" Because section 4A1.3 governs both upward and downward departures, we think it "obvious" that the arrest record prohibition applies to downward departure motions. *Smith*, 267 F.3d at 1160.

The government calls our attention to *United States v. Miller*, 263 F.3d 1, 4–5 (2d Cir. 2001) (per curiam), which found the sentence location theory sufficiently plausible to defeat plain error review. In reaching this conclusion, the court characterized the arrest record prohibition as occurring "at the end of the second of two paragraphs that deal solely with upward departures." *Id.* at 5. However, the first of the two paragraphs—the umbrella paragraph that begins section 4A1.3—is not limited to upward departures and instead emphasizes the need for basing *all* departure decisions on reliable information. That paragraph speaks in general terms— "the court may consider imposing a sentence *departing* from the otherwise applicable guideline range"—and without reference to direction upward or downward. *U.S. Sentencing Guidelines Manual* § 4A1.3, ¶ 1 (emphasis added). Equally telling, the first paragraph also states that departures may be

considered in any case in which reliable information indicates that the defendant's criminal history category "does not adequately reflect" the seriousness of the defendant's past conduct or risk of recidivism. *Id.* By contrast, the next two paragraphs limit upward departures to situations in which a defendant's criminal history category "significantly under-represents" the past conduct or risk of recidivism and downward departures to cases in which the category "significantly over-represents" the conduct or risk of recidivism. *Id.*, ¶¶ 2–3. By using broader language in the first paragraph, the Commission made clear that the reliable information requirement applies, sensibly, to both types of departures. *See United States v. Webb*, 139 F.3d 1390, 1395–96 (11th Cir. 1998) (describing the reliable information requirement as applying to downward departure decisions); *United States v. Fletcher*, 15 F.3d 553, 556 (6th Cir. 1994) (same); *United States v. Gayles*, 1 F.3d 735, 739 (8th Cir. 1993) (same). Any other reading would permit sentencing courts to depart downward on the basis of unreliable information, which cannot be what the Commission intended.

The government argues that even if section 4A1.3's reliable information requirement does apply when a district court departs downward, "there is no error, let alone plain error, that arises from the trial court's decision to withhold leniency from an offender who has an extensive arrest record" because the defendant bears the burden of proof. Appellee's Br. at 27–28. We disagree. The Supreme Court has held that regardless of whether a sentencing court departs upward or downward, "[w]hen a reviewing court concludes that a district court based a departure on both valid and invalid factors, a remand is required unless it determines the district court would have imposed the same sentence absent reliance on the invalid factors." *Koon v. United States*, 518 U.S. 81, 113 (1996). This rule does not change just because consideration of valid and invalid factors led the district court *to decline* to depart. Otherwise, defendants would have no redress where a court declines to depart downward on the basis of factors such as race, religion, and sex that are never relevant to the determination of a sentence, *see U.S. Sentencing Guidelines*

*Manual* § 5H1.10, or because it misconstrues the Guidelines to prohibit consideration of a legitimate mitigating factor. Because such a refusal to depart rests on a misapplication of the Guidelines, our case law clearly permits review under such circumstances. *See, e.g., United States v. Rhodes*, 145 F.3d 1375, 1383–84 (D.C. Cir. 1998) (remanding where sentencing court committed legal error by refusing to consider a permissible factor in denying a downward departure motion under section 5K2.0); *United States v. Shoupe*, 988 F.2d 440, 447 (3d Cir. 1993) (remanding where sentencing court committed legal error by refusing to consider permissible factors in denying a downward departure motion under section 4A1.3).

Of course, even if the district court had not relied on Joaquin's arrests, it might have properly concluded that Joaquin failed to carry his burden of proof to justify a downward departure—indeed, the court may do so upon remand. But that possibility does not change the fact that the court erred by placing evidence that it was barred from considering on the scales against Joaquin and that such a misapplication of the Guidelines is subject to appellate review. 18 U.S.C. § 3742(a)(2).

Thus, given that "failure to follow a clear legal norm may constitute plain error, without regard to whether the applicable statute or rule previously had been the subject of judicial construction," *United States v. Merlos*, 8 F.3d 48, 50 (D.C. Cir. 1993), we conclude that the district court committed plain error in considering Joaquin's "prior arrest record itself under § 4A1.3," without supporting evidence indicating that he had in fact engaged in prior criminal conduct not resulting in a conviction. *U.S. Sentencing Guidelines Manual* § 4A1.3. The government cannot dispute that there is a reasonable likelihood that this error prejudiced Joaquin, since the district court specifically stated that "[t]his number of arrests . . . for a young man of 29, is still an extraordinary number of arrests" immediately before concluding that Joaquin presented a significant risk of recidivism. Sentencing Tr. at 27. Because reliance on information expressly deemed unreliable by the Sentencing Commission seriously affects the

fairness and integrity of judicial proceedings, we see no reason for declining to exercise our discretion to correct the plain error by vacating Joaquin's sentence and remanding the case for further consideration. *Saro*, 24 F.3d at 288, 292.

In view of this disposition, we need not address Joaquin's argument that the district court, in calculating his criminal history category, also committed plain error by counting his February 1991 conviction, which occurred more than ten years before the instant offense. *See U.S. Sentencing Guidelines Manual* § 4A1.1, cmt. n.2. The government does not dispute that this violated the Guidelines, but contends that Joaquin cannot show prejudice because even without counting the conviction he still would have been placed in Category IV. Since the district court will have to reconsider its departure decision on remand anyway, we see no need to determine whether it was reasonably likely that the court would have granted a departure initially had it realized that Joaquin was at the bottom of Category IV rather than near the top. *See, e.g., United States v. Lastra*, 973 F.2d 952, 956 (D.C. Cir. 1992).

We vacate Joaquin's sentence and remand the case for resentencing consistent with this opinion.

*So ordered.*

Karen LeCraft Henderson, *Circuit Judge*, concurring in part and dissenting in part:

While I otherwise concur in the majority opinion, I dissent from the remand for resentencing because I perceive no error, plain or not, by the sentencing judge. The court used Joaquin's arrest record in declining to depart downward based on Joaquin's assertion that his "criminal history category significantly *over-represents the seriousness* of [his] criminal history or the likelihood that [he] will commit further crimes," pursuant to the *third* paragraph of Guidelines section 4A1.3, which is devoted to downward departures. U.S.S.G. § 4A1.3 ¶ 3 (emphasis added). Not only does the language on which the majority relies for error ("However, a prior arrest record itself shall not be considered under § 4A1.3") appear within the *second* paragraph of section 4A1.3, which the majority itself characterizes as "the upward departure paragraph," Maj. Op. at 7, the inclusion of the adversative "however" directly connects the language to the preceding sentence which authorizes the court to "conclude that the defendant's criminal history was *significantly more serious* than that of most defendants in the same criminal history category, and therefore consider an *upward departure* from the guidelines." U.S.S.G. § 4A1.3 ¶ 2 (emphasis added). The reason for limiting the arrest record proscription to upward departures paragraph is obvious. The proscription rests on a determination that an arrest record is not the kind of "reliable information" that section 4A1.3 requires as the basis to depart from the Guidelines' prescriptions. *See* U.S.S.G. § 4A1.3 ¶ 1 ("If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range."); *id.* commentary ("This policy statement authorizes the consideration of a departure from the guidelines in the limited circumstances where reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal history or likelihood of recidivism . . . ."). As a record of additional crimes, however, an arrest record will never be used to support a *downward* departure. Below,

the court did not rely on Joaquin's arrest record as a basis for making a departure at all but considered it only in declining to accept Joaquin's argument that his case lay outside the Guidelines' heartland and warranted a downward departure. The decision to adhere to the Guidelines' directives and not to depart is, as the majority recognizes, discretionary to the point of being unreviewable. *See* Maj. Op. at 4 (citing *United States v. Pinnick*, 47 F.3d 434, 439 (D.C. Cir. 1995)). The information supporting it therefore need not meet the standard of reliability required in making a departure. *See United States v. Miller*, 263 F.3d 1, 4–5 (2d Cir. 2001) (noting as reason not to apply arrest record prohibition to decision not to depart downward that "[c]ourts ... are generally subject to greater scrutiny when they choose to depart than when they opt to remain within the applicable sentencing range"); *cf. United States v. Chavez–Chavez*, 213 F.3d 420, 422 (7th Cir. 2000) (requirement that "reliable information" be used "when calculating a sentencing range under the guidelines, or departing upward to impose a higher sentence" does not apply "when a judge imposes a sentence within the guideline range (or, here, decides to curtail the extent of a downward departure)"; "[w]hen seeking a downward departure the defendant bears the burden, and the judge may disbelieve the defendant's position without requiring additional evidence").

Finally, even if the arrest record proscription is not unambiguously restricted to upward departures (which I believe it is), neither does it unambiguously extend to downward departures, given the language and structure of the departure provision as I have limned it above. Thus, Joaquin has not met his burden under the applicable plain error standard. *See United States v. Miller*, 263 F.3d at 4–5 (2d Cir. 2001) (concluding "a district court's reliance on prior arrest records as a basis for refusing to depart downward does not constitute 'plain error'" because it is not "implausible that the Sentencing Commission meant to prohibit the use of prior arrest records only in the context of upward departures").