Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 2, 2005        Decided January 27, 2006

No. 04-3142

UNITED STATES OF AMERICA,
APPELLEE

v.

LEON BOYD,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00489-01)

———

*Mary E. Davis*, appointed by the court, argued the cause for appellant.  With her on the brief was *Thomas Abbenante*, appointed by the court.

*Suzanne C. Nyland*, Assistant U.S. Attorney, argued the cause for appellee.  With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *David B. Goodhand*, Assistant U.S. Attorney.  *Roy W. McLeese, III*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON, ROGERS and BROWN, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*:  Leon Boyd appeals his conviction by a jury on the ground that the district court erred in admitting into evidence information from the files of the D.C. Pretrial Services Agency ("PSA") regarding the negative results of his drug test.  He also seeks re-sentencing.  The Government conceded at oral argument that the drug test evidence was admitted to show Boyd's guilt, which D.C. Code § 23-1303(d) prohibits, but maintains that any error was harmless because the evidence was admissible for impeachment under Federal Rule of Evidence 806 and because the evidence of Boyd's guilt was overwhelming.  We need not decide if the evidence was admissible under Rule 806 because we conclude that the error in admitting the evidence to show guilt was harmless.  Accordingly we affirm the judgment of conviction for drug and firearms offenses, except we remand the case to the district court for re-sentencing in light of *United States v. Booker*, 125 S. Ct. 738 (2005).

## I.

On November 5, 2002, Investigator Greene of the Metropolitan Police Department ("MPD") and other members of a narcotics unit were driving past the 1100 block of Bellevue Street, S.E., Washington, D.C.  Greene observed two men converse and engage in what seemed to be a drug transaction.  Boyd reached into his coat pocket and handed "small objects" to the other man, who then handed Boyd some money.  Upon searching the two men, the officers seized from Boyd's person a loaded handgun and a plastic bag with 1.7 grams of cocaine base in "small white rocks."

Boyd was indicted on three counts: (1) unlawful possession of a firearm and ammunition by a felon, 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (2) unlawful possession with intent to distribute cocaine base ("crack"), 21 U.S.C. § 841(a)(1) and (b)(1)(C); and (3) unlawful possession of a firearm during a drug trafficking

offense, 18 U.S.C. § 924(c)(1). The parties stipulated that at the time of his arrest Boyd had a prior felony conviction, that the firearm seized from him was operable, and that the firearm and ammunition were manufactured outside of the District of Columbia. An expert testified that the presence of 53 chunks in the bag seized from Boyd tended to show that he was going to distribute the drugs rather than use them himself.

Boyd's defense was that he possessed the drugs for his personal use. The police had recorded on MPD Form 163 Boyd's statement at the time of his arrest that "I was just getting ready to smoke that dog." On cross-examination, an MPD detective acknowledged that Boyd's statement was consistent with personal use. The district court then allowed the Government, over defense objection, to call a witness from the PSA who testified that Boyd had tested negative for cocaine on the day after his arrest. On cross-examination the witness acknowledged that Boyd had tested positive for opiates, which meant that he had ingested either heroin or an opiate prescription drug. As part of the defense case, Boyd recalled an MPD detective who testified that, as an alternative to using a crack pipe, crack cocaine can be consumed by sprinkling it on marijuana or "other smoking matter." The detective confirmed, however, that the crack seized from Boyd had not been pulverized into a form that would typically be used to sprinkle on other smoking matter. On redirect, the detective acknowledged that Boyd's statement at the time of his arrest was consistent with personal use of cocaine.

The jury convicted Boyd on all counts. The district court sentenced Boyd under the Sentencing Guidelines to 180 months' imprisonment on the distribution count, 120 months on the firearm and ammunition count, and 60 months for possessing a firearm during a drug trafficking offense, with the sentences to be served consecutively.

**II.**

D.C. Code § 23-1303(d) provides that information collected by the PSA "shall not be admissible on the issue of guilt in any judicial proceeding," although such information may be used "for the purposes of impeachment in any subsequent proceeding." Boyd argued in the district court that testimony about the result of his drug test was not probative of whether he used crack cocaine and was, in any event, an impermissible use of PSA information. On appeal he renews his objection, contending that the district court erred in admitting the evidence because, contrary to the statute, the drug test was used to prove that he did not possess crack for his personal use but rather in order to distribute it. Indeed, during closing argument the prosecutor pointed to the drug test evidence as undermining Boyd's defense that the crack that the police seized from him was for his personal use.

The Government conceded during oral argument that it had sought to admit the drug test evidence to prove Boyd's guilt, but maintains that any error was harmless because the drug test was admissible for impeachment purposes under Federal Rule of Evidence 806 and because there was overwhelming evidence that Boyd intended to distribute the drugs. Although it is not self-evident from the plain text of D.C. Code § 23-1303(d) that PSA information is admissible as impeachment evidence at a defendant's trial, the District of Columbia Court of Appeals has construed congressional intent to allow it, *see Herbert v. United States*, 340 A.2d 802, 804-05 (D.C. 1975), and Boyd does not challenge the admissibility of the drug test information on that ground. We need not decide, however, whether the drug test evidence was admissible for impeachment under Rule 806.

Upon review of an error for harmlessness, the court will reverse the judgment of conviction only if the error was

"prejudicial" in that it affected the defendant's "substantial rights." FED. R. CRIM. P. 52(a); *United States v. Coumaris*, 399 F.3d 343, 347 (D.C. Cir. 2005). Because the other evidence of Boyd's guilt was overwhelming, the erroneous admission of the PSA drug test evidence did not affect his "substantial rights." Although that evidence weakened Boyd's defense of personal use, it had no outcome-determinative bearing on the question whether Boyd possessed the drugs for his personal use rather than for purposes of distribution.

In addition to the parties' stipulations, the evidence showed that the officers had observed Boyd in what appeared to be a hand-to-hand drug transaction and that at the time he was in possession of a loaded firearm, crack cocaine worth $530 that was packaged in a manner consistent with how crack is carried by dealers selling it on the street, and $117 in small-denomination bills. Expert testimony explained why a personal user would not buy such a large quantity of crack cocaine at one time. An MPD narcotics detective, who had been detailed for years to the Drug Enforcement Administration as an intelligence analyst and who, without objection, was qualified as a narcotics expert, testified that the bag seized from Boyd contained 53 "chunks" of cocaine, far more than a cocaine user would carry around at once. According to the expert witness:

> [Crack cocaine users] have a basic formula of how they are going to use crack cocaine. They basically wake[] up. They figure out a way to get $10. They will go b[u]y a $10 rock or piece of crack cocaine, take it, smoke it, get high and unhigh, and depending upon their habit, they may do it several times a day. . . . There are reasons why these individuals don't go buy large quantities or 53 rocks for their personal use. These reasons are widely known and they range from the fact that there is crack cocaine of a very low quality

> that is on the street. They don't want to go and invest any large amount of money and find out they purchased crack of a very low quality because they will be stuck with it.

The officers found no device to smoke the drugs on Boyd at the time of his arrest and no drug paraphernalia in his apartment. Boyd's defense that he could have consumed the crack by crushing and smoking it was undermined by the evidence as to the non-pulverized condition of the 53 rocks in his possession and Boyd's contemporaneous statement that he was "getting ready" to smoke it. An MPD detective explained why Boyd's statement that he "was just getting ready to smoke that dog" was self-serving and should not be taken at face value: such a claim was "typically a statement than an individual with some experience would say to the police hoping they wouldn't get charged with distribution but merely possession."

Accordingly, because the evidence of Boyd's guilt was overwhelming, we affirm the judgment of conviction, except we vacate Boyd's sentence and remand the case for re-sentencing. The Government advised by letter of November 30, 2005, that it agrees with Boyd that his case should be remanded for re-sentencing in light of *Booker*, 125 S. Ct. 738. Boyd preserved his challenge to the Sentencing Guidelines in his memorandum in aid of sentencing, which raised objections under *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Government therefore acknowledges that the limited remand procedure for plain error review under *United States v. Coles*, 403 F.3d 764, 771 (D.C. Cir. 2005), does not apply. *See Coumaris*, 399 F.3d at 351.