# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 6, 2007       Decided February 29, 2008

No. 03-3102

UNITED STATES OF AMERICA,
APPELLEE

v.

MELVIN B. BROWN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 03cr00026-01)

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for the appellant. *A.J. Kramer*, Federal Public Defender, was on brief. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Allison L. Barlotta*, Assistant United States Attorney, argued the cause for the appellee. *Jeffrey A. Taylor*, United States Attorney, and *Roy W. McLeese III*, *Mary B. McCord*, *Sarah T. Chasson* and *Ellen C. Epstein*, Assistant United States Attorneys, were on brief.

Before: HENDERSON and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: A jury found appellant Melvin B. Brown (Brown) guilty of unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). Brown was sentenced to 96 months' imprisonment and three years' supervised release. Brown now appeals his sentence on the grounds that the district court erred when it relied on Brown's acquitted conduct in imposing a four level enhancement and erred again when it considered Brown's arrest record in selecting a sentence near the high end of the United States Sentencing Guidelines (Guidelines) range. For the reasons set forth below, we affirm the district court's judgment.

## I.

On the night of December 22, 2002, officers of the Metropolitan Police Department (MPD) set up an observation post in the 2500 block of Pomeroy Road, N.E. in the District. The MPD officers observed a group of men—including Brown—drinking beer in a parking lot while other cars pulled into the parking lot, apparently to buy drugs from them. When the group began to disperse, the officers approached in several police cars to detain them. Brown got into a Ford Focus and tried to leave the parking lot but was blocked by one of the police cars. Brown then attempted to flee on foot but was chased down by an MPD officer and arrested. While pursuing Brown, the MPD officer observed Brown remove a black handgun from his pocket and throw it under a van in the parking lot. During the subsequent inventory search, the officers discovered a small glass vial containing 20 milliliters of phencyclidine (PCP) in the front console area of the Ford Focus.

On January 23, 2003, Brown was indicted on one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g), one count of unlawfully possessing with intent to distribute PCP in violation of 21 U.S.C. §§ 841(a)(1) and

(b)(1)(C) and one count of possessing a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). Following a jury trial, Brown was convicted of the section 922(g) count but acquitted of the other two counts.

On August 19, 2003, the district court sentenced Brown to 96 months' incarceration and three years' supervised release. The court sentenced Brown at the high end of the Guidelines range based on several factors. First, it emphasized that "[t]his is a serious offense." *Id.* at 24. Second, it explained that "the fact that the conditions of release imposed prior to trial were violated, requiring that the defendant be held pending trial," influenced its decision. *Id.* Next, the court considered Brown's "lengthy record of contact with the criminal justice system replete with serious drug and weapons charges, including a serious conviction in addition to this conviction." *Id.* at 24-25. It then added that "[t]he juvenile convictions *and arrests* are relevant in my view, even though they are not part of the criminal history calculation." *Id.* at 25 (emphasis added). Finally, the court stated that Brown's 2001 probation violation was also "relevant." *Id.* The court prefaced its explanation with the statement that it did not intend to impose sentence until counsel were given "the chance to point out any error that they believe exists." *Id.* at 24. Defense counsel did not object before sentence was imposed. *Id.* at 27.

Brown filed a timely notice of appeal and on May 9, 2005, we granted the parties' joint motion to remand pursuant to *United States v. Coles*, 403 F.3d 764 (D.C. Cir. 2005). *United States v. Brown*, 455 F.3d 267 (D.C. Cir. 2005).[1] On remand,

---

[1]The "*Coles* remand" was necessitated by the Supreme Court's watershed opinion in *United States v. Booker*, 543 U.S. 220 (2005). *Booker* includes a "Substantive Opinion," addressing the merits of the Sixth Amendment issue, and a "Remedy Opinion." *See Coles*, 403 F.3d at 766. In the Substantive Opinion the Court held that "[a]ny fact

Brown argued for the first time that the district court had erred when it considered Brown's arrest record in selecting a sentence within the Guidelines range. The district court rejected Brown's argument and concluded that "[t]he same considerations that justified the Court's exercise of discretion to sentence Brown near the top of the Guidelines range when the Guidelines were still mandatory also support the Court's conclusion that, had it sentenced Brown using the Guidelines in an advisory fashion and taking into account all of the section 3553(a) factors, the same sentence would have been appropriate." *United States v. Brown*, 439 F. Supp. 2d 134, 139 (D.D.C. 2006). This appeal followed.

## II.

"[A] sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness." *United States v. Dorcely*, 454 F.3d 366, 376 (D.C. Cir. 2006);

---

(other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. at 224. In the Remedy Opinion, the Court "sever[ed] and excise[d]" two provisions of the Sentencing Reform Act of 1984, Pub. L. 98-473, 98 Stat. 1987 (1984): subsection 3553(b)(1), making use of the Guidelines mandatory, and section 3742(e), "set[ting] forth standards of review on appeal." *Id*. at 259. It instructed that "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing . . . [and] [t]hose factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." *Id.* at 261. *Booker* applied to all then-pending appeals "on direct review." *Id.* at 268. As discussed more fully *infra*, the *Coles* remand instructed the sentencing court to "determine whether it would have imposed a different sentence materially more favorable to the defendant had it been fully aware of the post-*Booker* sentencing regime." *Coles*, 403 F.3d at 770.

*see also Gall v. United States*, 128 S.Ct. 586, 597 (2007) ("Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard. . . . If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness."); *Rita v. United States*, 127 S.Ct. 2456, 2462 (2007) (appellate court "may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines"). Brown's base offense level for his felon-in-possession conviction was 20. *See* U.S.S.G. § 2K2.1(a)(4)(A). The district court then made a two-point upward adjustment because the firearm was stolen, *see id.* § 2K2.1(b)(4), and a four-point upward adjustment because he possessed the firearm in connection with another felony offense, *see id.* § 2K2.1(b)(6), for a total offense level of 26. With Brown's criminal history category III, the offense level resulted in a Guidelines range of 78 to 97 months. *See id.* ch. 5, pt. A. As noted, the court sentenced Brown within the Guidelines range to 96 months' imprisonment. Although Brown does not expressly challenge the reasonableness of the sentence, Brown contends that the district court erred by considering his acquitted conduct and his arrest record in sentencing him at the high end of the Guidelines range.

## A. *Brown's Acquitted Conduct*

Brown argues that the district court erred in imposing a four-point upward adjustment to his base offense level based on his acquitted conduct. Applying *de novo* review, we held in *Dorcely* that "a sentencing court may base a sentence on acquitted conduct without offending the defendant's Sixth Amendment right to trial by jury." 454 F.3d at 371; *see also United States v. Watts*, 519 U.S. 148, 156 (1997) (sentencing court's consideration of acquitted conduct does not violate double jeopardy clause). We concluded that "consideration of

acquitted conduct violates the Sixth Amendment only if the judge imposes a sentence that exceeds what the jury verdict authorizes." 454 F.3d at 371. Brown's conviction on the felon-in-possession count authorized a sentence of imprisonment of "not more than 10 years." 18 U.S.C. § 924(a)(2). Because he was sentenced to only 96 months' imprisonment, the district court was authorized to rely on Brown's acquitted conduct.

## B. *Brown's Arrest Record*

Brown also contends that the district court erred by considering his arrest record in determining the sentence it imposed. Before reaching the merits of Brown's argument, we address the applicable standard of review for this claim.

### 1. *Standard of Review*

According to the Government, the district court's reliance on Brown's arrest record should be reviewed for plain error because Brown failed to object to the use of his arrest record at his sentencing. Brown counters that we should review his claim *de novo* because Brown objected to the use of his arrest record at the *Coles* remand hearing.

We have held post-*Booker* that a sentencing judge who, pre-*Booker*, applied the Guidelines as mandatory committed a non-constitutional error. *See United States v. Carson*, 455 F.3d 336, 383 (D.C. Cir. 2006) ("We have distinguished between those misapplications of the Guidelines in which a sentencing court increases a sentence beyond the maximum that could have been imposed based solely on the facts reflected in the jury verdict, which, because they violate the Sixth Amendment are constitutional *Booker* errors, and those cases in which the court's error was only the mandatory, as opposed to advisory, treatment of the Guidelines. We call these latter errors non-constitutional *Booker* errors . . . .") (quotation omitted). If the defendant did not preserve his Sixth Amendment challenge to the Guidelines as mandatory by objecting at sentencing, as

Brown did not, we apply plain error review and assess "whether there would have been a materially different result, more favorable to the defendant, had the sentence been imposed in accordance with the post-*Booker* sentencing regime." *Id.* (quoting *Coles*, 403 F.3d at 767).[2] According to *Carson*, there are three types of sentencing appeals affected by *Booker*:

> First, "there undoubtedly will be some cases in which a reviewing court will be confident that a defendant has suffered no prejudice" such as where the judge imposes a "sentence at the statutory maximum and [states] that if he could he would have imposed an even longer sentence." [*Coles*, 403 F.3d] at 769 (citation omitted). In those cases, we affirm the sentence. Second, "there will be some cases in which we are confident that the defendant suffered prejudice [such as] where the . . . judge indicated on the record that, but for the Guidelines, she would have imposed a lower sentence." *Id.* In those cases, we remand for full resentencing. Third, as was the case in *Coles*, there will be cases where "the record simply is not sufficient for an appellate court to determin[e] prejudice with any confidence." *Id.*

*Carson*, 455 F.3d at 383-84 (footnote omitted) (second alteration added).

In the third category of cases—where the record is not sufficient to gauge prejudice *vel non*—we "remand the record" only and retain jurisdiction. *Coles*, 403 F.3d at 765, 770-71. On record remand, the district court is directed to "determine whether it would have imposed a different sentence materially

---

[2]If the defendant did preserve his Sixth Amendment challenge by objecting at sentencing, we do not use the *Coles* remand. *United States v. Boyd*, 435 F.3d 316, 319 (D.C. Cir. 2006).

more favorable to the defendant had it been fully aware of the post-*Booker* sentencing regime." *Id.* at 770.  The district court is not required to determine what the sentence would have been in making this determination and ""*"need not" require the presence of the Defendant.'" *Id.* (quoting *United States v. Paladino*, 401 F.3d 471, 484 (7th Cir. 2005) (quoting *United States v. Crosby*, 397 F.3d 103, 120 (2d Cir. 2005) (quoting Fed. R. Crim. P. 43(b)(3)))).  The remand thus serves the purely informational purpose of informing us whether the sentencing judge would have imposed "a different sentence materially more favorable to the defendant." *Id.*  If the sentencing judge concludes that he would have imposed a sentence materially more favorable to the defendant had the Guidelines been advisory only, we vacate the sentence and the district court then conducts a resentencing. *United States v. Gomez*, 431 F.3d 818, 823 (D.C. Cir. 2005).

As noted, after *Brown* appealed his sentence, we granted the parties' joint motion for a *Coles* remand. *Brown*, 455 F.3d at 267.  Because a *Coles* remand is only a record remand rather than a resentencing, Brown's original sentencing was his *only* sentencing and his failure to object to the use of his arrest record at that time means that we review at this time for plain error only. *See In re Sealed Case*, 349 F.3d 685, 690 (D.C. Cir. 2003) ("[P]lain error review is appropriate when the appellant fails to raise a claim at his sentencing hearing or when he fails to object to the district court's ruling.") (citing  Fed. R. Crim. P. 52(b)).[3]

_____

[3]Even if we had ordered a remand for resentencing, the district court might not have been able to consider Brown's argument regarding his arrest record. *See United States v. Whren,* 111 F.3d 956, 960 (D.C. Cir. 1997) ("[U]pon a resentencing occasioned by a remand, unless the court of appeals expressly directs otherwise, the district court may consider only such new arguments or new facts as are made newly relevant by the court of appeals' decision—whether by the reasoning or by the result.").

Plain error exists "'where (1) there is error (2) that is plain and (3) that affects substantial rights, and (4) the court of appeals finds that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Andrews*, 479 F.3d 894, 896 (D.C. Cir. 2007) (quoting *United States v. Johnson,* 437 F.3d 69, 74 (D.C. Cir. 2006)). "An error 'affect[s] substantial rights' if it is 'prejudicial.'" *United States v. Williams*, 488 F.3d 1004, 1008 (D.C. Cir. 2007) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)) (alteration in *Olano*). "To establish prejudice in the sentencing context, [the defendant] 'must show a reasonable likelihood that the sentencing court's obvious errors affected his sentence.'" *Id.* (quoting *United States v. Saro*, 24 F.3d 283, 288 (D.C. Cir. 1994)).

## 2. *The Merits*

The district court imposed a sentence at the high end of the Guidelines range based on its consideration of numerous factors, including Brown's arrest record. Sentencing Tr. 24-25, Aug. 19, 2003. Brown argues that the district court erred in considering his arrest record where the record lacked any evidence that Brown had in fact committed the conduct for which he was arrested. Brown also asserts that section 4A1.3 of the Guidelines expresses a policy against reliance on arrest records. Finally, Brown contends that "without evidence showing by a preponderance that he committed the conduct for which he was charged . . . the arrest record is irrelevant to the appropriate sentence." Appellant's Br. 15.

"In determining the sentence to impose within the guideline[s] range, or whether a departure from the guidelines is warranted, the court may consider, *without limitation, any information* concerning the background, character, and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4 (emphasis added); *see also* 18 U.S.C. § 3661 ("*No limitation* shall be placed on the information concerning the

background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.") (emphasis added). The all-inclusive language of both the Guidelines and 18 U.S.C. § 3661 makes clear that a defendant's arrest record may properly be considered as part of his "background."

Brown nonetheless contends that U.S.S.G. § 4A1.3(a)(3), which provides that "[a] prior arrest record itself shall not be considered for purposes of an upward departure," and the holding in *United States v. Joaquin*, 326 F.3d 1287 (D.C. Cir. 2003), that an earlier version of section 4A1.3 also prohibited reliance on an arrest record for a *downward* departure, together prohibit consideration of his arrest record. Section 4A1.3's prohibition, however, does not extend to the imposition of a sentence *within* the Guidelines range. As noted, the Guidelines' starting presumption is that "the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4. Section 4A1.3, whatever it prohibits regarding departures,[4] does not prohibit the

---

[4]The version of section 4A1.3 in effect when *Joaquin* was decided provided, in pertinent part:

> The court may, after a review of all the relevant information, conclude that the defendant's criminal history was significantly more serious than that of most defendants in the same criminal history category, and therefore consider an upward departure from the guidelines. However, a prior arrest record itself shall not be considered under § 4A1.3.

U.S.S.G. § 4A1.3 (2002 ed.). Based on this language, the *Joaquin* majority held that the arrest record prohibition applied to both upward and downward departures. 326 F.3d at 1292. In 2003 section 4A1.3 was amended and now states that "[a] prior arrest record itself shall

sentencing court's consideration of the defendant's arrest record when sentencing within the Guidelines range.

Brown's argument that an adverse inference cannot necessarily be drawn from an arrest record, without more, merits closer consideration. The district court could have inferred that none of Brown's arrests resulted in prosecutions because Brown was innocent. *See, e.g.*, *United States v. Zapete-Garcia*, 447 F.3d 57, 60-61 (1st Cir. 2006) ("More generally, a mere arrest, especially a lone arrest, is not evidence that the person arrested actually committed any criminal conduct. This is because arrest 'happens to the innocent as well as the guilty.'" (quoting *Michelson v. United States*, 335 U.S. 469, 482 (1948))). The district court did not view Brown's arrests in isolation, however, but instead in the context of numerous other contacts with the criminal justice system. For example, the court cited Brown's violation of the conditions of pre-trial release while awaiting trial on the instant charges as well as his prior convictions and probation violation. The court's reference to Brown's arrest record simply catalogued an additional example of Brown's repeated contact with the criminal justice system over a short period of time at a young age. Under these circumstances, the district court did not err in considering Brown's arrest record as one of many factors warranting a sentence at the top of the Guidelines range. *See Zapete-Garcia*, 447 F.3d at 61 ("[A] series of past arrests might legitimately suggest a pattern of unlawful behavior even in the absence of any convictions . . . ."); *cf. United States v. Chavez-Calderon*, 494 F.3d 1266, 1270 (10th Cir. 2007) (district court is not "precluded from considering uncontested conduct, even if uncharged, in formulating a reasonable sentence") (citing *United*

---

not be considered for purposes of an upward departure." U.S.S.G. § 4A1.3 (2007 ed.). Significantly, section 4A1.3 does not prohibit consideration of an arrest record for a downward departure.

*States v. Mateo*, 471 F.3d 1162, 1167-68 (10th Cir. 2006)).

Even assuming *arguendo* that the district court erred by considering Brown's arrest record, it did not plainly err. "If there is no clear legal rule—whether expressed in a prior decision or elsewhere—governing an issue, then the district court's decision cannot be a plain error." *Whren*, 111 F.3d at 960 (citing *United States v. Merlos*, 8 F.3d 48, 51 (D.C. Cir. 1993)). Both 18 U.S.C. § 3661 and the Guidelines, U.S.S.G. § 1B1.4, authorize the Court to consider any information "concerning the background, character and conduct" of the defendant, which information, under the circumstances of this case, includes Brown's arrest record.[5]

Finally, at the *Coles* remand hearing we originally ordered in this case, the district court determined that it "would not have imposed a sentence materially more favorable to defendant had it been fully aware of the post-*Booker* sentencing regime at the time of sentencing," *Brown*, 439 F. Supp. 2d at 139, and we find no plain error in Brown's sentence. *See United States v. Coles*, 186 Fed. Appx. 2, 3-4 (D.C. Cir. 2006).

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered.*

---

[5]*See also United States v. Winters*, 172 Fed. Appx. 282, 283 (11th Cir. 2006) (district court may consider defendant's arrest record); *United States v. Payo,* 40 Fed. Appx. 730, 731 (3d Cir. 2002) ("There is of course no objection to the District Court considering [charges that were nol-prossed or reduced to a lesser offense] as it is by now well accepted that the sentencing court may consider any reliable information."); *United States v. Hill*, 60 Fed. Appx. 564, 566 (6th Cir. 2003) ("Courts have consistently held that uncharged but relevant criminal conduct may be used in determining a defendant's sentencing guideline range.")