DEVER, District Judge,
concurring in part and dissenting in part:
I respectfully dissent from the failure to notice the error in defendant Moore’s life sentence, vacate Moore’s sentence, and remand for resentencing. See Majority Opinion at 271. In all other respects, I concur in the majority opinion.
I.
In United States v. Hughes, 401 F.3d 540, 547 (4th Cir.2005), the Fourth Circuit set forth its approach to analyzing Booker Sixth Amendment violations raised for the first time on direct appeal. This case is the first post-Hughes case in which the Fourth Circuit has applied Hughes, held that a Booker Sixth Amendment violation took place, recognized that the record fails to reflect what Moore’s sentence would *275 have been under an advisory scheme, yet declined to exercise its discretion to notice the error, vacate the illegal sentence, and remand for resentencing. Although declining to notice a Booker Sixth Amendment violation is not uncommon in those circuit courts that have adopted a different approach to analyzing plain-error issues arising from such Booker Sixth Amendment violations raised for the first time on direct appeal, the result in this case is materially inconsistent with Hughes and its progeny.
In Hughes, the Fourth Circuit set forth its approach to analyzing plain error as to Booker Sixth Amendment violations raised for the first time on direct appeal. The court held that such Booker Sixth Amendment violations meet the three-part plain-error test under cases such as United States v. Olano, 507 U.S. 725, 731-34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ((1) Did an error occur? (2) Was the error “plain”? and (3) Did the error actually affect the outcome of the proceedings?). See Hughes, 401 F.3d at 547-55. Once those three parts are satisfied, the Hughes court discussed the discretionary fourth part of plain-error analysis and stated:
[I]t remains within our discretion to determine whether the district court error warrants reversal. Our discretion is appropriately exercised only when failure to do so would result in a miscarriage of justice, such as when a defendant is actually innocent or the error seriously affects the fairness, integrity or public reputation of judicial proceedings.
Hughes, 401 F.3d at 555 (quotation omitted). In exercising that discretion in Hughes, the panel noted that because of the “plain and prejudicial Sixth Amendment error, Hughes was sentenced to a term of imprisonment nearly four times as long as the maximum sentence authorized by the jury verdict. There can be no doubt that failure to notice such an error would seriously affect the fairness, integrity, or public reputation of judicial proceedings.” Id. In reaching this conclusion, the panel found:
[The record did] not provide any indication of what sentence the district court would have imposed had it exercised its discretion under § 3553(a), treating the guidelines as merely advisory. Thus, although it is certainly possible that Hughes will receive the same sentence on remand, there is nothing in the record to compel such a conclusion. This possibility is not enough to dissuade us from noticing the error.
Id. at 556 (citations and footnotes omitted).[1]
*276 The Fourth Circuit’s approach in Hughes is consistent with the approach taken by the Third Circuit and the Sixth Circuit. See United States v. Davis, 407 F.3d 162, 164-65 (3d Cir.2005) (en banc); United States v. Oliver, 397 F.3d 369, 380 (6th Cir.2005). In contrast, the D.C., Second, Seventh, and Ninth Circuits have adopted a “limited remand” approach in order to help the appellate court assess the third step of plain-error review. See United States v. Coles, 403 F.3d 764, 765 (D.C.Cir.2005) (per curiam); United States v. Williams, 399 F.3d 450, 459-60 (2d Cir.2005); United States v. Paladino, 401 F.3d 471, 483-84 (7th Cir.2005); United States v. Ameline, 409 F.3d 1073, 1084 (9th Cir.2005) (en banc). Also in contrast, the First, Fifth, Eighth, Tenth, and Eleventh Circuits require a defendant raising a Booker Sixth Amendment violation for the first time on direct appeal to make a specific showing of prejudice to satisfy the third step of plain-error review. See United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir.2005); United States v. Mares, 402 F.3d 511, 521 (5th Cir.2005); United States v. Pirani, 406 F.3d 543, 547 (8th Cir.2005) (en banc); United States v. Dazey, 403 F.3d 1147, 1173-79 (10th Cir.2005); United States v. Rodriguez, 398 F.3d 1291, 1302 (11th Cir.2005); cf. Hughes, 401 F.3d at 549-52 (specifically rejecting the approach to the third step of the plain-error inquiry adopted by the Eleventh Circuit and declining to address the approach taken by the Second and Seventh Circuits).
II.
A.
Since Hughes, every panel publishing a Fourth Circuit opinion applying Hughes to a Booker Sixth Amendment violation raised for the first time on direct appeal has exercised its discretion at the fourth step of the plain-error analysis to notice the error, vacate the sentence, and remand for resentencing. See United States v. Uzenski, 434 F.3d 690, 711-12 (4th Cir.2006); United States v. Cardwell, 433 F.3d 378, 391-93 (4th Cir.2005); United States v. Ebersole, 411 F.3d 517, 534-35 (4th Cir.2005); United States v. Gray, 405 F.3d 227, 243-44 (4th Cir.2005); United States v. Ruhbayan, 406 F.3d 292, 302 (4th Cir.2005); United States v. Washington, 398 F.3d 306, 312-13 (4th Cir.2005).[2] In all of *277 these cases, the record did not reflect what sentence the district judge would have imposed absent the Booker Sixth Amendment violation.
In this case, Moore received a life sentence after a Booker Sixth Amendment violation. Absent the Booker violation, Moore would have faced a sentencing range of 292 to 365 months, based upon an offense level of 38 and a criminal history category of III. See Majority Opinion at 271-72. At Moore’s sentencing, the district judge made certain findings of fact concerning drug quantities, Moore’s leadership role, and his use of a minor, raising his offense level to 48. See Majority Opinion at 271-72; JA 2536-80 (entire transcript of sentencing hearing); JA 2554 (ultimate finding that the total offense level is 48 and criminal history category is III).
After determining the offense level to be 48 and the criminal history category to be III, the district judge stated that “the guideline range from the sentencing table is life.” JA 2554. Before giving the defendant an opportunity to address the court, the court recognized the AUSA, who stated: “Obviously, the guideline range, if you want to call it a range in this case, is a mandatory life sentence, and we don’t see any reason whatsoever to depart from that.” JA 2565. The district judge then addressed Moore’s counsel and stated: “Even though Mr. Moore gets a chance to argue, you also get a chance to argue. I don’t know how much good it will do him, due to the fact the Court is bound by the guidelines.” JA 2565. In response, Moore’s counsel stated:
It’s the guidelines. There’s not much I can say in this case. The guidelines say life and therefore, it’s life. I understand that. There’s not much I can say. I can’t point to much mitigation, extenuation or anything else at this stage of the game, even if I had it because the guidelines say life.
JA 2565. The district judge then responded: “Also, even if the Court believes that a lesser time was appropriate, the Court doesn’t have any options.” JA 2566. Moore’s counsel responded, “That’s the way I understand the law, Judge.” JA 2566. The district judge then recognized Moore to make a statement. Moore made a sworn statement. JA 2566-75. Thereafter, the district judge imposed a life sentence. JA 2575-76, 2581-82.
B.
At the fourth step of the plain-error analysis in this case, the majority declines to notice error, vacate the sentence, and remand for resentencing because “evidence concerning drug quantity was overwhelming and uncontroverted.” Majority Opinion at 272. The majority’s statement concerning drug quantities is undeniably correct, particularly in light of the district *278 judge’s discussion concerning drug quantities at the sentencing hearing. See JA 2545-46. Nevertheless, the jury did not make these findings, or the other findings that raised Moore’s offense level to 48, and Justice Stevens’ opinion in Booker teaches that under a mandatory scheme “[a]ny fact ... which is necessary to support a sentence exceeding the maximum authorized by the facts established by ... a jury verdict must be ... proved to a jury beyond a reasonable doubt.” United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 756, 160 L.Ed.2d 621 (2005). Moreover, and critically, as in Hughes and its progeny, “[t]he record does not provide any indication of what sentence the district court would have imposed had it exercised its discretion under [section] 3553(a), treating the guidelines as merely advisory.” Hughes, 401 F.3d at 556.
In declining to notice the error, vacate the sentence, and remand, the majority cites Johnson v. United States, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), United States v. Promise, 255 F.3d 150 (4th Cir., 2001) (en banc), and United States v. Cotton, 535 U.S. 625, 628-33, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). All three of these cases were decided pre-Booker and pre Hughes. In Johnson, the Supreme Court found that the district court committed error by failing to submit the issue of materiality to the jury in a perjury prosecution, but nevertheless declined to notice the error and vacate the conviction under plain-error -review. Johnson, 520 U.S. at 467-70, 117 S.Ct. 1544. The Court found that the evidence supporting the materiality element was overwhelming and “essentially uncontroverted” at trial and on appeal. Id. at 470, 117 S.Ct. 1544. In concluding that the error did not “seriously affect[ ] the fairness, integrity of public reputation of judicial proceedings,” the Court stated: “Indeed, it would be the reversal of a conviction such as this which would have that effect.” Id. (quotation omitted) (emphasis added).
In Promise, the Fourth Circuit held that a defendant’s sentence was erroneous because the indictment charging him did not allege the specific threshold drug quantities necessary to expose the defendant to a higher maximum sentence under the governing statute and because no quantity determination was made by the jury. Promise, 255 F.3d at 152. Under plain-error review, the court declined to notice the error and remand. It concluded, based on its review of the evidence presented at trial, that “[t]here simply can be no doubt that had the indictment included the specific threshold quantity of 50 grams of cocaine base, the jury would have found Promise guilty beyond a reasonable doubt.” Id. at 164.
In Cotton, the Supreme Court upheld a defendant’s sentence based upon the statutory drug-quantity sentencing enhancements in 21 U.S.C. § 841(b)(1)(A) even though such quantities were not alleged in the indictment. Id. The enhancement increased the maximum possible sentence from 20 years to life. Id. at 628. Two defendants received 30-year sentences and the others received life sentences. Id. Even assuming that the defendants established 'plain error arising from the omission of drug quantity in the indictment, the Court in Cotton declined to notice the error at the fourth step because the evidence at trial that the conspiracy involved at least 50 grams 'of cocaine base was “overwhelming” and “essentially uncontrovert-ed.” Id. at 632-33. The effect of the Court’s application of plain-error doctrine in Cotton was to obviate the need for a new indictment and a new trial. See id. at 634.
*279 In this case, unlike the defendants in Cotton or Promise, Moore can receive the exact same sentence on remand without having to be re-indicted and re-tried. Moore’s superceding indictment charges drug quantities. See JA 154-85. Further, the jury answered special interrogatories about certain drug quantities. See JA 2411-20. Although these quantities were not the quantities listed in the indictment, they did correspond to the “specific threshold drug quantities” codified in 21 U.S.C. § 841(b). See Majority Opinion at 21-22. Likewise, unlike Johnson, there was no error implicating the validity of Moore’s conviction, thereby requiring a new trial. Accordingly, Cotton, Promise, and Johnson do not control, and the rationale underlying Cotton, Promise, and Johnson does not apply. Rather, if the error in Moore’s sentence is noticed and the case remanded, the district court can go back and make the same, now-permissible, findings of fact, treat the guidelines as advisory pursuant to Booker and Hughes, and resentence Moore. On remand, the district court’s sentencing discretion would include, but not require, a life sentence.
Even though Johnson, Promise, and Cotton are distinguishable from the facts in this case, the more significant point is that Hughes and its progeny foreclose the majority’s analysis at the fourth step of plain-error review for Booker Sixth Amendment errors. Essentially, Hughes and its progeny hold that all such Booker Sixth Amendment errors require a remand in those instances where it is unclear what sentence the district judge would have imposed had the guidelines been advisory. Here, the majority departs from this Fourth Circuit precedent by applying Johnson, Promise, and Cotton[3] to a Sixth Amendment Booker violation raised for the first time on direct appeal where the judge-found facts prejudiced the defendant and the record gives no indication of what sentence the district court would have imposed under an advisory scheme.[4] Indeed, *280 until this opinion, it appeared that the Fourth Circuit would rely on Hughes and its progeny to notice error and remand every sentence infected by such a Booker Sixth Amendment violation.
C.
The majority states that it is “unavailing” that no Fourth Circuit panel has paused at the fourth step of the plain-error analysis to consider whether the evidence was “overwhelming” and “essentially un-controverted.” Majority Opinion at 273 n. 10. The majority then states that it “cannot take silence as an indication that [all of the Fourth Circuit panels applying Hughes and its progeny to Booker Sixth Amendment violations raised for the first time on direct appeal] decided such an inquiry was improper. Even if that is one possible inference, it is equally plausible that the issue was not presented or that the evidence was not overwhelming or uncontro-verted.” Id.
The majority’s observation about the silence of all Fourth Circuit panels calls to mind the Sherlock Holmes mystery Silver Blaze. Arthur Conan Doyle, Silver Blaze, in The Complete Sherlock Holmes 335 (1927). In Silver Blaze, Sherlock Holmes was investigating the theft of an expensive race horse named Silver Blaze from a stable and the death of Silver Blaze’s trainer. Another investigator asked Holmes if there was any particular aspect of the crime that was worthy of attention. Id. at 347. Holmes replied in the affirmative, noting “the curious incident of the dog in the night-time.” Id. The investigator said to Holmes, “The dog did nothing in the night-time.” Id. Holmes responded, “That was the curious incident.” Id. Holmes then pointed out that the failure of the watch dog to bark when Silver Blaze was stolen showed that the watch dog knew the thief. Id. at 349. This fact was compelling, considerably reduced the number of suspects, and eventually solved the case. Id.
As in Silver Blaze, the failure of any Fourth Circuit panel applying Hughes and its progeny to “bark” at the fourth step of the plain-error analysis is compelling. This deafening silence confirms Judge Duncan’s observation in White that Hughes and its progeny applied to “a total class of defendants.” White, 405 F.3d at 226 (Duncan J., concurring in part and dissenting in part).
If the Fourth Circuit’s silence in its post -Hughes progeny (both published and unpublished) were not enough, a close review of four published cases — Uzenski, Cardwell, Ebersole, and Ruhbayan — demonstrates ho;w Hughes has been interpreted to preclude the majority’s analysis. In all of these cases, the panels cited Hughes, noted that the record did not reflect what sentence the district judge would have imposed absent the Booker Sixth Amendment violation, and remanded, regardless of whether the evidence relating to judge-found facts was “overwhelming” and “essentially uncontroverted.”
In Uzenski, 434 F.3d at 694, the defendant was convicted of four counts related to manufacturing and possessing an unregistered firearm (to wit, pipe bombs) and a fifth count of obstruction of justice. At sentencing, the district judge found “abuse of position of trust or use of special skill” under section 3B1.3 of the United States Sentencing Guidelines and thereby increased the defendant’s sentence from a range of 41-53 months to an actual sentence of 60 months. Id. at 711. The panel described the defendant as a detective for the Winterville Police Department who had experience with explosives. Id. at 694-95. The defendant built two pipe bombs. He planted one of them on the main highway leading into the town of *281 Winterville, North Carolina. He then “discovered” the pipe bomb while on patrol, used his police radio to call for help, and was designated the case agent. A variety of law enforcement personnel responded to the scene and disarmed the bomb. Law enforcement personnel then searched the area thoroughly and turned evidence over to the defendant in his capacity as case agent. That evening, the defendant returned to the scene and planted another pipe bomb three feet from the site of where he “found” the first pipe bomb. The next day, along with other law enforcement personnel, the defendant returned to the location to investigate the “first” pipe bomb and law enforcement personnel discovered the second pipe bomb. Again, the highway was closed, and the second pipe bomb was disarmed. Id. at 694-95. After the investigation focused on the defendant, the defendant repeatedly denied any involvement with building the pipe bombs or planting them on the highway. Id. at 697-98.
Under the majority’s analysis, the fourth step of plain-error analysis now requires each panel to ask whether there is any “question that the jury, having found that the offenses were committed, would have also determined that the offenses involved [the judge-found fact that increased the sentencing range.]” Majority Opinion at 272. In my view, if the jury in Uzenski were asked whether Detective Uzenski “abused a position of public trust ... in a manner that significantly facilitated the commission or concealment of the offense,” then the jury would have answered that question yes. That, however, is not what the Uzenski panel did. Instead, the panel noticed the error at the fourth step, and remanded the case to the district judge who found the fact concerning abuse of a position of public trust and imposed the sentence.
Similarly, in Cardwell, the two defendants each received a judge-found four-level enhancement on their “murder-for-hire convictions based on [the district court’s] finding that the conspiracy and solicitation offenses involved the offer or the receipt of anything of pecuniary value for undertaking the murder.” Cardwell, 433 F.3d at 392 (quotation omitted). Without the judge-found fact, defendant Hin-son’s sentencing range would have been 210-262 months. With this judge-found fact, his range increased and the court sentenced Hinson to 293 months. Id. As to defendant Cardwell, without this judge-found fact, Cardwell’s sentencing range would have been 78-97 months. With the judge-found fact, Cardwell’s range increased and the court sentenced Cardwell to 131 months. Id. The panel analyzed the fourth part of the plain-error analysis for the defendants’ sentences, noticed the errors, and remanded for resentencing. Id. at 392-93.
The Cardwell panel noted that the government initially argued that any error should not be noticed because the evidence concerning the enhancements was “overwhelming” and “essentially uncontrovert-ed,” but “expressly abandoned this position at oral argument and in supplemental briefing.” Id. at 392 n. 7. As the government’s supplemental filing in that case suggests, the government abandoned this argument not based on the weight of the evidence relating to the judge-found facts, but rather because the United States Department of Justice believes that Hughes mandates that a sentence be vacated and remanded if infected with Booker Sixth Amendment error and there is no indication of what sentence the district judge would have imposed and under an advisory system. See Gov. Supp. Citation of Authority 1 (“In United States v. Hughes ... the Court ruled that a mandatory guidelines sentence that was enhanced by judi *282 cial fact-finding in violation of United States v. Booker ... requires vacation of the sentence and a remand for resentenc-ing.”) (emphasis added).
In Ebersole, the defendant was convicted of 25 counts of wire fraud and two counts of presenting false claims to the government. Ebersole, 411 F.3d at 520. “Without the various enhancements to the offense level — each of which was based upon facts found by the district court, not by the jury — the applicable sentencing range would have been zero to six months of imprisonment.” Id. at 534.
As for the fourth prong of the plain-error analysis, the Ebersole panel applied Hughes and its progeny and stated:
Finally, to affirm Ebersole’s sentence despite the error would seriously affect the fairness, integrity, or public reputation of the judicial proceedings. In the wake of Booker, as we have recognized, the Guidelines are to be treated as advisory, rather than mandatory, and sentences that fall within the statutorily prescribed range are reviewable only for reasonableness. Hughes, 401 F.3d at 546 (citing Booker, 125 S.Ct. at 765-68). The record before us does not indicate what sentence the court would have imposed on Ebersole had its exercised its discretion under 18 U.S.C. § 3553(a) and treated the Guidelines as merely advisory; although it is possible that Ebersole will receive the same sentence on remand, “[t]his possibility is not enough to dissuade us from noticing the error.” Id. at 556. We therefore exercise our discretion to notice the error, vacate Ebersole’s sentence, and remand for re-sentencing consistent with Booker and its progeny.
Id. at 535.
Finally, in Ruhbayan, the panel analyzed a Booker Sixth Amendment error and a record devoid of what sentence the district judge would have imposed absent the error. Ruhbayan, 406 F.3d at 302. The panel stated that, under such circumstances, it was “obliged to exercise” its discretion to notice the error, vacate the sentence, and remand for resentencing. Id. The sentencing variance based on the Booker Sixth Amendment error in Ruh-bayan is similar to the variance faced by Moore. In Ruhbayan, the Booker Sixth Amendment violation led the district court to impose a life sentence — “a total term of imprisonment greater than that authorized by the jury verdict, seriously affecting ‘the fairness, integrity or public reputation of the judicial proceedings.’ ” Id. (quoting Olano, 507 U.S. at 732, 113 S.Ct. 1770).[5] Absent the judge-found facts in Ruhbay-an, the defendant’s maximum sentence under the guidelines would have been 262 months. See id. at 301 n. 9.
III.
Given that the district judge, Moore’s counsel, and the AUSA all agreed that life was mandatory in light of the findings and, critically, that the district judge never indicated that he believed life in prison was appropriate for Moore even under a non-mandatory system, this case is materially indistinguishable from Hughes and its progeny. In fact, in reviewing Hughes and its progeny (both published and unpublished), it appears that countless Fourth Circuit panels could have paused at the fourth step of the plain-error analysis, *283 cited Johnson, Promise, or Cotton, asked what the jury would have determined as to the judge-found fact, and held that the evidence associated with a given judge-found fact was “overwhelming” and “essentially uncontroverted.”[6] The panels did not, however, apparently due to the Sixth Amendment principles articulated in Booker, the fourth step of the plain-error analysis applied in Hughes and its progeny, and principles of stare decisis. Cf. United States v. Prince-Oyibo, 320 F.3d 494, 498 (4th Cir.2003) (panels of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel; only the Supreme Court or this court sitting en banc can do that); United States v. Chong, 285 F.3d 343, 346 (4th Cir.2002) (same); accord McMellon v. United States, 387 F.3d 329, 332-33 (4th Cir.2005) (en banc).
rv.
If the Fourth Circuit wants to revisit Hughes and its progeny sitting en banc and address the merits of the majority’s approach to plain-error analysis, the entire court is (of course) free to do so. I offer no opinion as to whether Hughes and its progeny are in tension with the third or fourth step of plain-error analysis in cases such as Olano, Johnson, and Cotton. My point is much more narrow: unless this court revisits Hughes and its progeny en banc, and an en banc court adopts the majority’s approach, Hughes and its progeny control. Accordingly, the failure to *284 notice the Booker Sixth Amendment violation applicable to Moore, vacate his sentence, and remand for resentencing would “seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings.” Gray, 405 F.3d at 243; Ruhbayan, 406 F.3d at 302. Further, given that Moore is age 43 (JA 2581), the difference between a life sentence and a 365-month sentence is material. See, e.g., Gray, 405 F.3d at 243; Ruhbayan, 406 F.3d at 301-02.Thus, I respectfully dissent from the failure to notice the Booker Sixth Amendment violation applicable to Moore’s sentence, to vacate Moore’s sentence, and to remand for resentencing. In all other respects, I concur in the majority opinion.

. While this passage in Hughes refers to the importance at the fourth step of the plain-error analysis of determining whether the trial judge indicated what the sentence would have been under an advisory scheme, Hughes and its progeny make clear that the two passages quoted above provide the governing analysis for addressing Booker Sixth Amendment error. Of course, "Booker Sixth Amendment error” is distinct from the ' ‘statutory Booker error” analyzed extensively in United States v. White, 405 F.3d 208 (4th Cir.2005). A statutory Booker error arises when the trial judge errs by treating the guidelines as mandatory. Id. at 215-25. In White and Hughes, the Fourth Circuit made clear that a “statutory Booker error” was distinct from a Booker Sixth Amendment error, which arises when a trial judge increases a sentence based on facts not found by a jury (or in a guilty plea case, a fact not admitted to by the defendant). See White, 405 F.3d at 216 n. 5; Hughes, 401 F.3d at 552. In Hughes, the court explained that "the act of mistakenly treating the guidelines as mandatory is not part of the Sixth Amendment error before us, despite the fact that the former mandatory nature of the guidelines set the stage for the constitutional violation in Booker." Id. at 553; see also id. at 551 n. 8 ("This case does not present and we do not address, the question of whether a defendant suffers prejudice because.a sentencing court fails to treat the guidelines as advisory in *276 determining the sentence.”) Thus, this court's analysis at the fourth step of its plain-error review in White to statutory Booker error does not suggest that this court applies the same plain-error analysis to a Booker Sixth Amendment violation.
Indeed, two aspects of White compel the opposite conclusion. First, the White majority explained that in Hughes the court exercised its discretion to notice the Booker Sixth Amendment violation at the fourth step of the plain-error analysis due to the prejudicial effect arising from the substantial increase in Hughes’ sentence. White, 405 F.3d at 224 n. 11. Second, Judge Duncan's partial dissent in White aptly described Hughes as ''deciding] that one segment of the total class of defendants authorized to seek resentencing can meet the stringent requirement of showing plain error and they are therefore entitled to resentencing.” Id. at 226 (Duncan, J., concurring in part and dissenting in part). The segment of the total class of defendants to which Judge Duncan referred was "defendants whose maximum sentences as authorized by the jury were less than that imposed by the judge based on facts found pursuant to the mandatory sentencing regime....” Id. at 226; see also id. at 227 (“Hughes concluded that one of the group of defendants sentenced under the now invalid § 3553(b)(1) must be resentenced ....”) (emphasis added).

. Although this footnote does not include a string cite to all Fourth Circuit unpublished opinions that have applied Hughes and its progeny, the same appears to be true with respect to unpublished opinions. For example, four recent unpublished opinions vacate and remand sentences with almost no discus *277 sion after finding Booker Sixth Amendment violations raised for the first time on direct appeal. See United States v. Fields, No. 03-4645, 2006 WL 305556, slip op. at 2-3 (4th Cir. Feb. 9, 2006) (unpublished); United States v. Perez-Mendez, 162 Fed.Appx. 207 (4th Cir.2006) (unpublished); United States v. Burwell, 162 Fed.Appx. 203 (4th Cir.2006) (unpublished); United States v. McCullum, 161 Fed.Appx. 265 (4th Cir.2006) (unpublished). One Fourth Circuit panel, in an unpublished opinion, found that no Sixth Amendment violation took place, but then stated in dicta that even if it had found a Sixth Amendment violation it would have declined to remand based on United States v. Cotton, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). See United States v. Shivers, 146 Fed.Appx. 609, 611 (4th Cir.2005) (unpublished). This dicta in Shivers, however, stands in contrast to the dozens upon dozens of cases that have vacated sentences after finding Booker Sixth Amendment violations and an absence of any indication of what the sentence would have been under an advisory scheme.

. The Fourth Circuit did apply Cotton at the fourth step of plain-error analysis in United States v. Harp, 406 F.3d 242 (4th Cir.2005). In Harp, however, the court confronted a situation in which the elements of a career offender designation were not alleged in the indictment. Harp, 406 F.3d at 247. Again, because there is no defect in Moore's indictment, Harp’s application of Cotton is not implicated in this case.

. A Cotton-type analysis of the evidence is not uncommon at the third or fourth step of plain-error review of the Sixth Amendment Booker violations raised for the first time on direct review in the First, Fifth, Eighth, Tenth, and Eleventh Circuits. See, e.g., Pirani, 406 F.3d at 554; Dazey, 403 F.3d at 1177. By contrast, the Sixth Circuit has expressly rejected applying Cotton to Booker Sixth Amendment violations raised for the first time on direct appeal. See Oliver, 397 F.3d at 380 n. 3. Likewise, the Third Circuit’s unanimous en banc decision in Davis implicitly rejected applying Cotton to Booker Sixth Amendment violations raised for the first time on direct appeal. See Davis, 407 F.3d at 164-65.
In Oliver, the Sixth Circuit cogently explained why the type of plain-error analysis employed in Cotton is not necessarily applicable in the context of Booker Sixth Amendment violations. The court explained that the "outcome in Cotton was premised on the determination that an Apprendi violation could not be remedied through re-sentencing.” Oliver, 397 F.3d at 380 n. 3. The court further explained that the remedial opinion in Booker obviated this concern by granting district judges the discretion to make the same findings under the now advisory system. Id. Finally, it noted that an appellate court weighing whether evidence was “overwhelming and essentially uncontroverted, ” cannot answer the question of what sentence a district judge would have given with the same evidence under an advisory scheme and, as such, Cotton-type analysis at the appellate level "usurp[s] the discretionary power granted to the district courts by Booker" by assuming that the same sentence would have been imposed. Id. Citing Oliver, the en banc Third Circuit unanimously came to the same conclusion in Davis. See Davis, 407 F.3d at 165.

. The district judge departed upward from the guidelines in imposing a life sentence, but the Fourth Circuit concluded that this upward departure was premised on the district judge’s factual finding relating to the defendant's role in the offense. Ruhbayan, 406 F.3d at 302.

. This newly announced method of asking panels of this court at the fourth step of plain-error analysis to step in the shoes of a jury and predict what the jury would have found as to a given fact resulting in an enhancement and then predict the effect of the enhancement on the sentence raises other issues. For example, the vast majority of criminal cases are resolved through guilty pleas. Before today, in cases involving guilty pleas, Booker Sixth Amendment error, and a record devoid of what sentence the district judge would have imposed, this court held that “a sentence that was imposed under the pre-Booker mandatory sentencing scheme and was enhanced based on facts found by the court ... [and] not admitted to by the defendant [] constitutes plain error that affects the defendant's substantial rights and warrants reversal under Booker when the record does not disclose what discretionary sentence the district court would have imposed under an advisory guidelines scheme.” United States v. Spivey, No. 04-4657, 2006 WL 559095, slip op. at 3 (4th Cir. Mar.8, 2006) (unpublished) (citing Hughes, 401 F.3d at 546-56).
Apparently, a different process will now take place at the fourth step of plain-error analysis involving guilty pleas, Booker Sixth Amendment error, and a record devoid of what sentence the district judge would have imposed. Specifically, panels of this court will pause at the fourth step of plain-error analysis, review the record of the arraignment and sentencing hearings (and any other record evidence from the district court), stand in the shoes of the district judge who actually found the facts that created the Booker Sixth Amendment error and imposed the sentence, determine whether the evidence as to a given judge-found fact was "overwhelming” and "essentially uncontroverted'' (though not admitted by the defendant), and then speculate as to what the district judge would have done. If the appellate panel determines that the record evidence in front of the district judge was "overwhelming” and "essentially uncon-troverted” as to a given judge-found fact, then the case will not be remanded to that district judge to resentence the defendant.
In my view, whether a case is resolved by a jury verdict or a guilty plea, Hughes and its progeny dictate a more straightforward approach at the fourth step of this court's plain-error analysis: if the record is devoid of what sentence the district judge would have imposed, the panel remands the case to the district judge who found the facts that created the Booker Sixth Amendment error and imposed the sentence and directs the district judge to resentence the defendant under the advisory system. Moreover, in stating that a district judge "created” a Booker Sixth Amendment error, I offer no criticism of any district judge. Such judges were simply following "the law and procedure in effect at the time” of sentencing. Hughes, 401 F.3d at 545 n. 4.