# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Decided April 8, 2005

No. 03-3113

UNITED STATES OF AMERICA,
APPELLEE

v.

TERENCE COLES,
APPELLANT

———

Appeal from the United States District Court
(USDC) for the District of Columbia
(No. 02cr00204-01)

———

*Jenifer Wicks* and *Bernard S. Grimm* were on the brief for appellant.

*Kenneth L. Wainstein*, U.S. Attorney, *John R. Fisher*, *Roy W. McLeese, III*, *Anthony M. Alexis*, and *SuzAnne C. Nyland*, Assistant U.S. Attorneys, were on the brief for appellee.

Before: EDWARDS, SENTELLE, and GARLAND, *Circuit Judges*.

Opinion for the Court filed *Per Curiam*.

2

*Per Curiam*:  This case raises an important issue left open by the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), concerning the application of the plain-error doctrine to appeals from sentences rendered under the Federal Sentencing Guidelines before the Supreme Court ruled that they are advisory rather than mandatory.  In addressing this issue, we align ourselves generally with the decisions of the Second Circuit in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), and the Seventh Circuit in *United States v. Paladino*, No. 03-2296, 2005 WL 435430 (7th Cir. Feb. 25, 2005), *reh'g en banc denied*, *id.* (7th Cir. Feb. 25, 2005), and most particularly with the approach adopted by the Seventh Circuit.  Because the record is insufficient for us to determine with confidence whether the defendant suffered  prejudice from the *Booker* error in this case, we hereby remand the record to the District Court so that it may determine whether it would have imposed a different sentence, materially more favorable to the defendant, if sentencing had taken place under the post-*Booker* sentencing regime.

**I.**

Terence Coles was convicted of conspiracy, two counts of bribery, and two counts of fraud, in violation of federal and District of Columbia law, for his participation in a scheme to obtain grant money fraudulently from the District of Columbia's Escheated Estates Fund while he was the Special Assistant to the Secretary of the District of Columbia.  *See* 18 U.S.C. § 201(b)(2) (2000) (bribery); D.C. CODE ANN. §§ 22-1805a (2001) (conspiracy); *id.* § 22-3221(a) (fraud in the first degree).  The District Court sentenced Coles on the bribery counts pursuant to the Sentencing Guidelines, under which Coles was assigned a base offense level of 10 and a criminal history category of I.  *See* UNITED STATES SENTENCING COMMISSION, GUIDELINES MANUAL §§ 2C1.1(a), 4A1.1 (2001).  The District Court added two levels to the base offense level, because "the

offense involved more than one bribe," *id.* § 2C1.1(b)(1), and it added eight additional levels, because "the offense involved a payment for the purpose of influencing . . . any official holding a high-level decision-making or sensitive position," *id.* § 2C1.1(b)(2)(B). These adjustments raised Coles' offense level from 10 to 20, increasing the applicable sentencing range from 6-to-12 months to 33-to-41 months. *Id.* ch. 5, pt. A (sentencing table).

The District Court sentenced Coles to 36 months' imprisonment for each of the federal bribery counts, to run concurrently. The trial court also imposed 36-month prison sentences for each of the three D.C. Code convictions for conspiracy and fraud, all to run concurrently with the bribery sentences.

Coles appealed to this court, challenging both his conviction and his sentence. We affirmed Coles' conviction, but held the challenge to his sentence in abeyance pending the Supreme Court's decision in *Booker*. *See United States v. Coles*, No. 03-3113, 2004 WL 2862212 (D.C. Cir. Dec. 13, 2004) (per curiam). Following the Court's decision in *Booker*, the parties submitted supplemental briefs addressing the impact of that decision on the sentence in this case. We now address Coles' challenge to his sentence.

## II.

The Court's decision in *Booker* is cogently summarized in *Crosby*:

> Since November 1, 1987, sentences in federal criminal cases have been determined pursuant to the Sentencing Reform Act of 1984 ("SRA"), Pub. L. 98- 473, Title II, §§ 211-238, 98 Stat. 1987 (1984), and the Guidelines issued by the United States Sentencing Commission, *see* U.S.S.G. §§ 1A1.1-8F1.1. . . .

4

. . . .

The Supreme Court's decision in *Booker/Fanfan* significantly altered the sentencing regime that has existed [under] the Guidelines . . . . The Court's two-part decision consists of an opinion by Justice Stevens adjudicating the merits of the Sixth Amendment issue ("Substantive Opinion"), and an opinion by Justice Breyer setting forth the remedy ("Remedy Opinion"). . . .

. . . In the Substantive Opinion, the Court ruled that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Substantive Opinion, [125 S. Ct. at 756]. This ruling, the Court explained, was required for "enforcement of the Sixth Amendment's guarantee of a jury trial in today's world." *Id.* at [751]. . . .

The Substantive Opinion emphasized that it was the mandatory aspect of these determinate sentencing regimes that implicated the Sixth Amendment's requirement of a jury trial:

> We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges . . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

*Id.* at [750] (internal citations omitted).

. . . .

In the Remedy Opinion, the Court ruled that implementation of the Substantive Opinion required that two provisions of the SRA be "sever[ed] and excise[d]." Remedy Opinion, 125 S. Ct. at 764. These are subsection 3553(b)(1), mandating use of the Guidelines, and section 3742(e), which "sets forth standards of review on appeal." Remedy Opinion, *id*.

Having severed and excised the SRA's standards governing review of sentences, the Court in the Remedy Opinion replaced them with "a practical standard of review already familiar to appellate courts: review for 'unreasonable[ness].'" *Id*. at 765 (quoting subsection 3742(e)(3)). . . .

Although the most significant aspect of the Remedy Opinion is the excision of subsection 3553(b)(1), with the result that the use of the Guidelines to select a sentence is no longer mandatory, a critically important aspect of *Booker/Fanfan* is the preservation of the entirety of the SRA with the exception of only the two severed provisions. As the Court noted in the Remedy Opinion, "The remainder of the Act 'function[s] independently.'" Remedy Opinion, 125 S. Ct. at 764 (citing *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987)). Notably, the Court explained, "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." *Id*. at 766.

*Crosby,* 397 F.3d at 107-10 (footnotes omitted) (alterations in original).

The Court in *Booker* instructed that its holdings should be applied "to all cases on direct review." 125 S. Ct. at 769. The Court, however, did not "believe that every appeal will lead to

a new sentencing hearing." *Id.* Rather, the Court explained, "we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test." *Id.*

### III.

Coles contends that his sentence should be vacated in light of *Booker*. Specifically, he argues that his Sixth Amendment rights were violated, because his sentence was enhanced by the trial court based on facts neither admitted by him nor proved to a jury beyond a reasonable doubt. Although Coles objected to the District Court's findings of fact at sentencing, he raised no arguments in the District Court questioning either the constitutionality of the Guidelines or their mandatory application. Accordingly, we review Coles' *Booker* claim only for plain error. FED. R. CRIM. P. 52(b).

Under the plain-error standard of Rule 52(b), "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)) (alteration in original). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 467 (quoting *Olano*, 507 U.S. at 732) (internal quotation marks and alteration omitted).

It is clear that Coles satisfies the first two elements of the plain-error test, for the District Court applied the Guidelines on the assumption that they were mandatory. Following *Booker*, this was error and it is undoubtedly "plain." And the Supreme Court has made it clear that "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal . . . it is enough that an error be 'plain' at the time of appellate consideration." *Id.* at 468. The Government does not dispute

that Coles has satisfied the first two elements of the plain error test. *See* Supplemental Br. for Appellee at 7 n.5.

We are also convinced that, if the District Court's error was prejudicial, the error would "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." As the Seventh Circuit aptly observed, "[i]t is a miscarriage of justice to give a person an illegal sentence that increases his punishment, just as it is to convict an innocent person." *Paladino*, 2005 WL 435430, at *9; *see also United States v. Williams*, 399 F.3d 450, 461 (2d Cir. 2005) ("[L]eaving in place an error-infected sentence that would have been materially different absent error and that could be readily corrected would 'seriously affect[] the fairness, integrity or public reputation of judicial proceedings.' Indeed, it would seriously affect all three." (footnote and citation omitted) (alteration in original)).

Thus, the only question remaining is whether the District Court's error affected Coles' substantial rights in a material way. We now turn to that question.

## IV.

We hold that, in assessing whether the District Court's *Booker* error was prejudicial, we must determine whether there would have been a materially different result, more favorable to the defendant, had the sentence been imposed in accordance with the post-*Booker* sentencing regime. This mode of inquiry has been adopted, either implicitly or explicitly, by the First, Second, Fifth, Seventh, and Eleventh Circuits. *See United States v. Mares*, No. 03-21035, 2005 WL 503715, at *9 (5th Cir. Mar. 4, 2005) ("[T]he pertinent question is whether Mares demonstrated that the sentencing judge – sentencing under an advisory scheme rather than a mandatory one – would have reached a significantly different result."); *Paladino*, 2005 WL 435430, at *10 ("[I]f the judge would have imposed the same sentence even if he had thought the guidelines merely advisory

(in which event there would have been no Sixth Amendment violation), and the sentence would be lawful under the post-*Booker* regime, there is no prejudice to the defendant."); *United States v. Antonakopoulos*, 399 F.3d 68, 75 (1st Cir. 2005) ("[T]he defendant must point to circumstances creating a reasonable probability that the district court would impose a different sentence more favorable to the defendant under the new 'advisory Guidelines' *Booker* regime."); *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005) ("[I]n applying the third prong, we ask whether there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case."); *Crosby*, 397 F.3d at 118 ("[A] sentence imposed under a mistaken perception of the requirements of law will satisfy plain error analysis if the sentence imposed under a correct understanding would have been materially different.").

The Fourth and Ninth Circuits, in contrast, have found plain error under *Booker* when a trial judge determined facts which, under the Guidelines, increased a sentence beyond that authorized by the jury verdict or an admission by the defendant. In other words, these circuits assess plain error without regard to whether the sentencing judge would have reached a different result under an advisory sentencing scheme. *See United States v. Hughes*, No. 03-4172, 2005 WL 628224, at *5-*12 (4th Cir. Mar. 16, 2005); *United States v. Ameline*, 400 F.3d 646, 654 (9th Cir. 2005), *reh'g en banc granted*, 2005 WL 612710 (9th Cir. Mar. 11, 2005). The problem with this approach is that it employs the wrong baseline for determining prejudice in light of *Booker*'s remedy. In other words, the courts employing this approach assess error and prejudice as if the pre-*Booker*, mandatory sentencing regime were still in place, and as if the error were judicial factfinding under that regime. This flies in the face of the Supreme Court's remedial order in *Booker*.

In assessing whether a district court committed prejudicial error under *Booker*, an appellate court must determine what the sentencing court would have done had it not committed the error. In their assessments of plain error, the Fourth and Ninth Circuits find error when a sentencing court increased a Guidelines sentence beyond that corresponding to the facts established by the jury verdict or an admission by the defendant. But such a finding seems to assume that judicial factfinding is erroneous even under the advisory sentencing regime left us by *Booker*, which it surely is not. The Supreme Court in *Booker* plainly says:

> We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. . . . [W]hen a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

125 S. Ct. at 750.

A prescient pre-*Booker* sentencing court committing no error would have behaved just as a sentencing court in the post-*Booker* era will operate: it would have treated the Guidelines as advisory. And it would have committed no error if it had increased a sentence beyond that suggested by the Guidelines in light of the facts established by the jury verdict or an admission by the defendant, so long as the sentence was within the prescribed statutory range and otherwise reasonable.

As noted in *Williams*, the error under *Booker* "is the mandatory use of the Guidelines enhancement, not the fact of the enhancement." 399 F.3d at 458; *see also Antonakopoulos*, 399 F.3d at 75 ("The error is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error

is only that the judge did so in a mandatory Guidelines system."); *Rodriguez*, 398 F.3d at 1300 ("The error that was committed in pre-*Booker* sentencing . . . is not that there were extra-verdict enhancements . . . that led to an increase in the defendant's sentence. The error is that there were extra-verdict enhancements used in a mandatory guidelines system.").

## V.

This brings us to the question of how to determine whether the District Court would have imposed a sentence materially more favorable to the defendant had it been aware of the post-*Booker* sentencing regime. There undoubtedly will be some cases in which a reviewing court will be confident that a defendant has suffered no prejudice. For example, "if a judge were to impose a sentence at the statutory maximum and say that if he could he would have imposed an even longer sentence, there would be no basis for thinking that if he had known that the sentencing guidelines are merely advisory he would have given the defendant a lighter sentence." *Paladino*, 2005 WL 435430, at *9. Indeed, we recently found no prejudice in a case in which the sentencing judge twice departed upward from the Guidelines. *See United States v. Smith*, No. 03-3087, 2005 WL 627077 (D.C. Cir. Mar. 18, 2005) (per curiam). When the judge initially departed upward, he told the defendant, "I believe, in my view, that you deserve the sentence . . . imposed here." *Id*. at *1. The case was remanded before *Booker* issued and the trial judge was forced to impose a shorter sentence on grounds not relevant here. However, the trial judge again departed upward. *Id*. On the second appeal, this court found that it was clear that the defendant had suffered no prejudice:

> The district judge, on each of the prior two sentencings, imposed a sentence beyond what the Guidelines require. . . . On remand, the judge was forced to impose a shorter sentence – 21 months – but again reached the figure by

departing upward, even though the government had not requested an upward departure on resentencing. . . .

> *Booker*'s requirement that the sentencing judge appreciate that he is not bound by the Guidelines thus plainly cannot help Smith. Smith . . . recognizes that giving the district judge wider latitude in this case could very well result in a longer sentence. Smith was not prejudiced by the impermissibly mandatory nature of the Guidelines; if anything, he benefitted from it.

*Id.*

Conversely, there will be some cases in which we are confident that the defendant suffered prejudice, say, for example, if the sentencing judge indicated on the record that, but for the Guidelines, she would have imposed a lower sentence.

In a case like this one, however, the record simply is not sufficient for an appellate court to determine prejudice with any confidence. The Government notes here that the District Court sentenced Coles to 36 months in prison, "somewhat above the lower end" of the 33-to-41 months Guidelines range, but this is hardly conclusive. "A conscientious judge – one who took the guidelines seriously whatever his private views – would pick a sentence relative to the guideline range. If he thought the defendant a more serious offender than an offender at the bottom of the range, he would give him a higher sentence even if he thought the entire range too high." *Paladino*, 2005 WL 435430, at *9. We agree with the Seventh Circuit, following the lead of the Second Circuit, that "[t]he only practical way (and it happens also to be the shortest, the easiest, the quickest, and the surest way) to determine whether the kind of plain error argued in these cases has actually occurred is to ask the district judge." *Id.* at *10; *see also Crosby*, 397 F.3d at 117.

The Fifth and Eleventh Circuits have concluded that, because the burden of showing prejudice is on the defendant, the

fact that the record is insufficient to reach a conclusion regarding prejudice means that the defendant necessarily loses. *See Rodriguez*, 398 F.3d at 1301 ("[W]here the effect of an error on the result in the district court is uncertain or indeterminate – where we would have to speculate – the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error; he has not met his burden of showing prejudice; he has not met his burden of showing that his substantial rights have been affected."); *see also Mares*, 2005 WL 503715, at *9. But as the Seventh Circuit has noted:

> Given the alternative of simply asking the district judge to tell us whether he would have given a different sentence, and thus dispelling the epistemic fog, we cannot fathom why [we should] condemn some unknown fraction of criminal defendants to serve an illegal sentence. *Crosby* is the middle way between placing on the defendant the impossible burden of proving that the sentencing judge would have imposed a different sentence had the judge not thought the guidelines mandatory and requiring that all defendants whose cases were pending when *Booker* was decided are entitled to be resentenced, even when it is clear that the judge would impose the same sentence and the court of appeals would affirm.

*Paladino*, 2005 WL 435430, at *11.

Persuaded by the Second and Seventh Circuits, we conclude that, because the record is insufficient to determine whether the error was prejudicial, we will remand the record to the District Court so that it may determine whether it would have imposed a different sentence materially more favorable to the defendant had it been fully aware of the post-*Booker* sentencing regime. In making this determination, the District Court "need not determine what that sentence would have been." *Crosby*, 397 F.3d at 118 n.20. *Crosby*, 397 F.3d at 118 n.20. And while

"'the District Court should obtain the views of counsel, at least in writing, [it] "need not" require the presence of the Defendant.'" *Paladino*, 2005 WL 435430, at *10 (quoting *Crosby*, 397 F.3d at 120 (quoting FED. R. CRIM. P. 43(b)(3))).

We note that the "limited remand" procedures adopted by the Second and Seventh Circuits offer slightly different approaches. The Second Circuit procedure requires that the district court *itself* vacate the original sentence if it determines that resentencing is warranted. *See Crosby*, 397 F.3d at 117, 120; *see also Williams*, 399 F.3d at 461 n.15. By contrast, under the Seventh Circuit's procedure, the appellate court retains jurisdiction throughout the limited remand, and thus it is the *appellate court* that will "vacate the sentence upon being notified by the judge that he would not have imposed it had he known that the guidelines were merely advisory." *Paladino*, 2005 WL 435430, at *10. We think the Seventh Circuit's approach is more faithful to *Booker*'s instruction that "reviewing courts" should apply "ordinary prudential doctrines" such as plain error, *see* 125 S. Ct. at 769, and we will accordingly retain jurisdiction over this case.

Because the record is unclear, in this case the District Court should also state whether the sentences for the defendant's D.C. Code convictions were the product of the court's independent, discretionary judgment. *See United States v. Cutchin*, 956 F.2d 1216, 1219 (D.C. Cir. 1992) ("[T]he Sentencing Guidelines apply only to federal crimes under 18 U.S.C. § 3551(a). Defendants found guilty of violations of the D.C. Code can only be sentenced under the D.C. Code.").

## VI.

Accordingly, while retaining jurisdiction over the case, we remand the record to the District Court for the limited purpose of allowing it to determine whether it would have imposed a

different sentence, materially more favorable to the defendant, had it been fully aware of the post-*Booker* sentencing regime.

*So ordered.*